IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| ROBERT L. HOOD, | ) | CASE NO. 1:16 CV 1915 |
| | ) | |
| Plaintiff, | ) | JUDGE SARA LIOI |
| | ) | |
| v. | ) | MAGISTRATE JUDGE |
| | ) | WILLIAM H. BAUGHMAN, JR. |
| COMMISSIONER OF SOCIAL | ) | |
| SECURITY, | ) | |
| | ) | **REPORT & RECOMMENDATION** |
| Defendant. | ) | |

## Introduction

Before me by referral[1] is an action for judicial review of the final decision of the Commissioner of Social Security denying the application of the plaintiff, Robert L. Hood, for disability insurance benefits.[2] The Commissioner has answered[3] and filed the transcript of the administrative record.[4]  Under my initial[5] and procedural[6] orders the parties have

---

[1] This matter was referred to me under Local Rule 72.2 in a non-document order dated August 1, 2016.

[2] ECF # 1.

[3] ECF # 10.

[4] ECF # 11.

[5] ECF # 6.

[6] ECF # 12.

briefed their positions.[7] and filed supplemental charts[8] and the fact sheet.[9]  They have participated in a telephonic oral argument.[10]

**A.     Background facts and decision of the Administrative Law Judge ("ALJ")**

Hood who was forty-three years old at the time of the administrative hearing,[11] is a high school graduate.[12]  He is not married and has four children, two are under the age of eighteen.[13]  His past relevant employment history includes work as a shipping and receiving clerk, forklift operator, body shop worker, inventory clerk, and machinist.[14]

The Administrative Law Judge ("ALJ"), whose decision became the final decision of the Commissioner, found that Hood had severe impairments consisting of degenerative disc disease and scoliosis of the lumbar and thoracic spine; degenerative disc disease of the cervical spine; osteoarthritis of the right knee; and major depressive disorder (20 CFR

---

[7] ECF # 13 (Hood's brief), ECF # 19 (Commissioner's brief), ECF # 21 (Hood's reply brief).

[8] ECF # 22 (Commissioner's charts); ECF # 14, Attachment 2 (Hood's charts).

[9]  ECF # 14, Attachment 1.

[10] ECF # 24.

[11] ECF #14-1.

[12] *Id*.

[13] ECF # 11, Transcript ("Tr.") at 195.

[14] *Id*. at 30.

404.1520(c)).[15] The ALJ made the following finding regarding Hood's  residual functional

capacity:

> The claimant has the residual functional capacity to lift/and or carry up to 10
> pounds occasionally and 5 pounds frequently; stand and/or walk for up to 2
> hours; and sit for up to 6 hours in an 8 hour workday with normal breaks.  The
> claimant can never climb ladders, ropes, or scaffolds but occasionally climb
> ramps or stairs; and occasionally balance, stoop, kneel, crouch, and crawl.  The
> claimant can occasionally reach overhead.  The claimant must avoid
> concentrated exposure to extreme cold, wetness, and excessive vibration; and
> all exposure to moving machinery and unprotected heights.  The claimant
> requires the use of a cane.  The claimant is limited to simple, routine, and
> repetitive tasks with no strict production rate or fast-pace work.[16]

Given that residual functional capacity, the ALJ found Hood incapable of performing

his past relevant work as a shipping and receiving clerk, forklift operator, body shop worker,

inventory clerk, and machinist.[17] Applying the medical-vocational grids in Appendix 2 of the

regulations, the ALJ found Hood not under a disability.[18]

Based on an answer to a hypothetical question posed to the vocational expert at the

hearing setting forth the residual functional capacity finding quoted above, the ALJ

determined that a significant number of jobs existed locally and nationally that Hood could

perform.[19] The ALJ, therefore, found Hood not under a disability.

---

[15] *Id*. at 21.

[16] *Id.* at 25.

[17] *Id*. at 30.

[18] *Id*. at 31.

[19] *Id*.

**B.**     **Issues on judicial review**

Hood asks for reversal of the Commissioner's decision on the ground that it does not have the support of substantial evidence in the administrative record. Specifically, Hood presents the following issues for judicial review:

- Whether the ALJ gave the most weight to the state agency paper reviewing psychologists' opinions. Nonetheless, the ALJ omitted multiple mental health limitations opined by the state agency without any reasoning or explanation.

- Whether the ALJ failed to properly evaluate the physical health impairments. Specifically, she failed to properly consider Mr. Hood's spondylolisthesis and neglected to properly explain why Mr. Hood's left wrist impairment did not impact  the residual functional capacity determination.

- Whether the ALJ's residual functional capacity is not supported by substantial evidence because it does not properly consider the inherent impact that a cane has on sedentary level work and because it does not include all of the relevant restrictions.[20]

The Court recommends that the ALJ's finding of no disability is supported by substantial evidence and, therefore, must be affirmed.

## Analysis

**A.**     **Applicable law-substantial evidence**

The Sixth Circuit in *Buxton v. Halter* reemphasized the standard of review applicable to decisions of the ALJs in disability cases:

--------

[20] ECF #13 at 2.

Congress has provided for federal court review of Social Security administrative decisions. 42 U.S.C. § 405(g). However, the scope of review is limited under 42 U.S.C. § 405(g): "The findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive...." In other words, on review of the Commissioner's decision that claimant is not totally disabled within the meaning of the Social Security Act, the only issue reviewable by this court is whether the decision is supported by substantial evidence. Substantial evidence is " 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' "

The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion. This is so because there is a "zone of choice" within which the Commissioner can act, without the fear of court interference.[21]

Viewed in the context of a jury trial, all that is necessary to affirm is that reasonable minds could reach different conclusions on the evidence. If such is the case, the Commissioner survives "a directed verdict" and wins.[22] The court may not disturb the Commissioner's findings, even if the preponderance of the evidence favors the claimant.[23]

I will review the findings of the ALJ at issue here consistent with that deferential standard.

---

[21] *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001) (citations omitted).

[22] *LeMaster v. Sec'y of Health & Human Servs.*, 802 F.2d 839, 840 (6th Cir. 1986); *Tucker v. Comm'r of Soc. Sec.*, No. 3:06CV403, 2008 WL 399573, at *6 (S.D. Ohio Feb. 12, 2008).

[23] *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007).

-5-

**B.**      **Recommendation**

Essentially this case presents the issue of whether the RFC is supported by substantial evidence. In particular, Hood contends that the RFC as formulated does not take into account all of his physical and mental limitations, specifically those mental limitations found in medical source opinions that were given great weight.[24] He further contends that the RFC is not supported by substantial evidence because it does not adequately provide greater restrictions arising from Hood's need to use a cane.[25]

I will address these issues individually.

*1.*      *Physical impairments*

The ALJ at Step Two determined that there are three severe physical impairments: (1) degenerative disc disease and scoliosis of the lumbar and thoracic spine; (2) degenerative disc disease of the cervical spine; and (3) osteoarthritis of the right knee.[26] Hood argues that it was error for the ALJ not to have listed spondylolisthesis as a severe impairment,[27] and it was also error not to have considered the effects of his left wrist deformity when fashioning the RFC.[28]

---

[24] ECF # 13 at 6-13.

[25] *I*d. at 13-15.

[26] Tr. at 21.

[27] ECF # 13 at 9-11.

[28] *Id*. at 11-13.

As to Hood's spondylolisthesis, the Commissioner contends that spondylosis or spondylolisthesis is simply the medical term for degenerative disc disease, and as such was explicitly addressed by the ALJ.[29]  Indeed, as was noted in *Rivera v. United States*,[30] the term spondylosis is applied unspecifically to any degenerative lesion of the spine, such as osteoarthritis.[31]  Here, the ALJ explicitly recognized Hood's severe impairment of degenerative disc disease in the lumbar and cervical spine[32] and then thoroughly discussed Hood's treatment for such degenerative disk disease.[33]

Accordingly, there was no error in the ALJ's handling of Hood's spondylosis because this impairment was specifically identified by the ALJ and then completely discussed.

As to any impairments associated with Hood's left wrist, at Step Two of the sequential evaluation process the ALJ took note of 2012 x-rays that documented distortion and deformity in the radiocarpal joint of the left wrist.[34]  But, the ALJ also observed that during

---

[29] ECF # 19 at 7 (citing cases).

[30] *Rivera v. United States*, No.10 CIV 5767, 2012 WL 3132667 (S.D.N.Y. July 31, 2012).

[31] See*, id.* at *8 (citation omitted); see also*, Melendez v. McDonald*, No. 15-2637, 2016 WL 4904013, at *2 (U.S. Vet. App. Sept. 25, 2016)(spondylosis is "degenerative spinal changes due to osteoarthritis....")(quoting *Dorland's Illustrated Medical Dictionary* 1754 (32d ed. 2012)).

[32] Tr. at 21.

[33] *Id*. at 26-27.

[34] *Id*. at 22.

a 2013 consultative examination Hood was able to fully manipulate and move his left wrist.[35]
From this, the ALJ concluded that, at most, any difficulties with his left wrist only minimally
affected work-related functioning.[36]

Further, at Step Four, the ALJ stated that Hood had normal grasp, pinch, and
manipulation during the 2013 consultative examination.[37]  In addition, the ALJ also gave
only  little weight to the 2012 functional opinion from a physical therapist that Hood could
work at the light exertional level with no manipulative limitations,[38] noting further that Hood
had no physical  functional limitations from his treating providers.[39]

The ALJ's decision to treat any left wrist impairment as non-severe at Step Two was
supported by substantial evidence.  Given the evidence cited above, the RFC as formulated
has the support of substantial evidence.  That RFC imposes limitations to sedentary work,
and, as to lifting, carrying, reaching and climbing, exceed any physical functional limitations
set out in the relevant opinions related to any impairment of the left wrist.[40]

---

[35] *Id*.

[36] *Id*.

[37] *Id*. at 23.

[38] *Id*. at 29 (citing record at 571-72).

[39] *Id*.

[40] *Id*.

## 2.    *Mental impairments*

As the Commissioner observes,[41]   Hood essentially argues here that the ALJ's decision to give great weight to the opinions of state-agency reviewing psychologist Bonnie Katz's April 2013 functional opinion and state-agency reviewing psychologist Mel Zwissler's July 2013 functional opinion[42] required the ALJ to adopt their common opinion that Hood could interact with others only on a superficial basis or explain why this restriction was not incorporated into the RFC.[43]

The portion of the RFC at issue limits Hood to "simple, routine, and repetitive tasks with no strict production rate or fast-paced work."[44]  As such, it reflects, as noted by the ALJ, particular findings of Dr. Curt Ickes, Ph.D., a state agency consulting examiner, who found that Hood has a history of getting along well with others and could respond appropriately to the general public.[45]  Moreover, and as also expressly stated by the ALJ, the RFC reflects Hood's own assessment of himself where he stated that he had "no difficulty getting along with others, including neighbors and family."[46]  Importantly, the ALJ qualified the great weight given to the state agency consultants' opinions by stating that the weight was assigned

---

[41] ECF # 19 at 5.

[42] *Id.* at 29.

[43] ECF # 13 at 6-8.

[44] Tr. at 25.

[45] *Id*. at 23-24 (citing record).

[46] *Id*. at 24.

to those opinions finding Hood only mildly limited in social functioning, "as these are consistent with the record."[47]

While it may be that the ALJ could have been more precise in explaining the weight given to opinions of state agency consultants in individual, specific aspects, as well as any caveats to that weight assignment, it remains clear, that the ALJ based this portion of the RFC largely on the findings of Dr. Ickes and Hood's own statements.  It also seems clear, as the ALJ discussed, that the great weight given to the record-reviewing consultants related to their conclusion that Hood "could perform tasks in a setting without strict time or fast-paced production requirements," while the great weight given to Dr. Ickes concerned his conclusion that Hood "has no further limitations," inasmuch as he had a "history of interacting well with others" and "the ability to maintain sufficient attention and concentration."[48]

There is no requirement that an ALJ craft a perfect opinion.[49] Rather, the objective is to state the rationale for any decision in a way that conforms to the regulations, can be judicially reviewed, and is supported by substantial evidence.   Here, the reasoning and supporting evidence for the decision of the ALJ in fashioning this element of the RFC is apparent on the record and so may be judicially reviewed.  To the degree that this portion of the RFC relies on Dr. Ickes's opinion and Hood's own testimony rather than on the opinions

---

[47] *Id*. (citing record).

[48] *Id.* at 29-30.

[49] *White v. Comm'r of Soc. Sec.,* 970 F.Supp.2d 733, 741 (N.D. Ohio 2013)(citation omitted).

of the two reviewing sources, the ALJ adequately explains the reasons for the relative weight given, which in no way contradicts the assessment of great weight given to the reviewers's opinions in other respects.

Accordingly, and for the reasons stated, I recommend finding that no error occurred in fashioning the RFC, and that the RFC is supported by substantial evidence.

### 3.    *Step Five - use of a cane*

Hood contends that the ALJ did not adequately show that the sedentary jobs identified by the VE were compatible with Hood's need to use a cane.[50]  In particular Hood argues that although the RFC makes note that he "requires the use of a cane,"[51] it did not include a sit/stand option nor did it account for the use of a cane in changing postural positions, as the VE noted.[52]

Hood admits that the RFC does specify that he requires the use of a cane, This is not a situation where the ALJ neglected to include such a limitation in the RFC.

Further, in this instance, the VE testified that Hood's need for a cane would not affect his ability to perform the three sedentary jobs identified.[53]  Although Hood appears to claim that it is inherently illogical to craft an RFC calling for sedentary work and not include a

---

[50] ECF # 13 at 15.

[51] Tr. at 25.

[52] ECF # 13 at 15.

[53] See, tr. at 71-72.

sit/stand option,[54] the ALJ addressed this concern by noting that if the RFC provided that Hood could perform a full range of sedentary work, the regulations would compel a finding that he was not disabled.[55]  But, because this RFC explicitly recognizes that Hood's ability to work at this level has "been impeded by additional limitations" - *i.e.*, his need for a cane - the ALJ consulted a VE to determine if jobs existed that met the precise contours of the RFC, including the need to use a cane.[56]  Given all these factors, including the additional limitations for the use of a cane, the uncontroverted testimony of the VE was that Hood could perform the jobs listed.[57]

Nothing in the regulations requires the ALJ to conduct his own investigation into the accuracy of a VE's testimony, especially when the claimant has brought no issue to the attention of the ALJ at the hearing.[58]  Indeed, if an ALJ inquired of the VE as to consistency with the DOT and received an affirmative response, the ALJ has met his obligations under the regulations, and there is no error in relying on the findings of the VE.[59]

---

[54] ECF # 13 at 14-15.

[55] Tr. at 31.

[56] *Id.*

[57] *Id.*

[58] *Ledford v. Astrue*, No. 07-4234, 2008 WL 5351015, at *10 (6th Cir. Dec. 19, 2008)(citation omitted).

[59] *Kyle v. Comm'r of Soc. Sec.,* 609 F.3d 847, 858 (6th Cir. 2010).

Here, the ALJ extensively discussed with the VE how the need for a cane would affect the performance of essential functions at sedentary, unskilled positions, as well as directly asking the VE if his testimony was consistent with the DOT.[60]  The VE testified that Hood would be able to perform the essential functions of the three jobs he listed, and further testified that his testimony was consistent with the DOT.[61]

Therefore, as the Sixth Circuit expressly stated, the ALJ, by conducting the colloquy just recounted, has fully complied with his duties under the regulations and may then rely on the conclusion of the VE without incurring error.  There was no error in how the ALJ accounted for Hood's need for a cane at Step Five.

## Conclusion

For the reasons given above, I recommend finding that the decision of the Commissioner denying benefits to Robert L. Hood is supported by substantial evidence and so should be affirmed.


Dated: July 6, 2017                                          s/ William H. Baughman, Jr.
                                                            United States Magistrate Judge

---

[60] Tr. at 72-73

[61] *Id.*

-13-

**Objections**

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days of receipt of this notice. Failure to file objections within the specified time waives the right to appeal the District Court's order.[62]

---

[62] *See*, *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). *See also*, *Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).

-14-